**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMES TERMINIELLO, CHARLES WITKOWSKI, and JOSEPH T. HADALA, on behalf of themselves and all others similarly situated, | : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : <br> : |
| NEW JERSEY MOTOR VEHICLE COMMISSION, RAYMOND P. MARTINEZ, individually and in his official capacity as Chief Administrator of the New Jersey Motor Vehicles Commission, YAMILETH CONTRERAS, individually and in her official capacity as Acting State Registrar of Vital Statistics, and LEXISNEXIS VITALCHEK NETWORK INC. f/k/a VitalChek Network, Inc. d/b/a VitalChek Network, a LexisNexis Company, a Tennessee corporation, | : <br> : |
| Defendants. | |

**OPINION**

Civ. No. 11-3359 (WHW)

**Walls, Senior District Judge**

Plaintiffs James Terminiello, Charles Witkowski, and Joseph T. Hadala, on behalf of themselves and all others similarly situated, filed a Special Complaint in Lieu of Prerogative Writs in the Superior Court of New Jersey, Appellate Division, asserting state and federal law claims. Defendant LexisNexis VitalChek Network Inc. ("VitalChek") removed the case to the United States District Court for the District Court of New Jersey. Before this Court are Plaintiffs' Motion to Remand, Defendant VitalChek's Motion to Dismiss, and Plaintiffs' Motion

**NOT FOR PUBLICATION**

for Leave to Amend their complaint.  Pursuant to Rule 78 of the Federal Rules of Civil

Procedure, the motions are decided without oral argument.  Plaintiffs' Motion to Remand is

denied, Defendant VitalChek's Motion to Dismiss is granted, and Plaintiffs' Motion for Leave to

Amend is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a policy statement issued by defendant New Jersey Motor Vehicle

Commission ("Commission") on December 27, 2006 regarding the use of Hudson County birth

certificates[1] in support of an application to obtain a motor vehicle license, renewal license, or

non-driver identification card.  Compl. ¶¶ 2, 7.  This policy was allegedly implemented by

Defendants, including VitalChek.  Id. ¶ 2.  This policy proscribes individuals with Hudson

County birth certificates dated before 1965 from using those certificates as a form of

identification to the Commission[2].  Id. ¶ 7.  These individuals must present either an alternative

form of identification set forth in N.J. Admin Code § 13:21-8.2(b)(1)(i), or obtain another birth

---

[1] Hudson County birth certificates include those issued by the Hudson County Office of Vital Statistics or its predecessors, the Hudson County Board of Health and Vital Statistics and the Hudson County Bureau of Vital Statistics.  Compl. ¶ 6.

[2] The policy statement provides that:

> After careful review of the current policy for checking the validity of Hudson County birth certificates (HCBC) the Motor Vehicle Commission (MVC) has decided not to renew the Memorandum of Understanding (MOU) with the State Office of Vital Statistics.  The result of this action means that we, the NJ MVC, will be assuming a different approach when it comes to acceptance of birth certificates from Hudson County.
>
> *Effective January 1, 2007* a HCBC submitted as a primary document *will not be accepted by the New Jersey Motor Vehicle Commission*, with the following exceptions:
> 1) The document is from the towns of Bayonne, Hoboken, Kearney [sic], or Weehawken.  These towns were not affected by the problems with Hudson County Birth Certificates *and are acceptable* as proof of ID.
> 2) HCBC's issued from 1965 or after.  These documents can be verified by our system by accessing the ICON on your PC's.  Please contact my office if you do not have this access.

Id. ¶41.

**NOT FOR PUBLICATION**

certificate from Defendant Yamileth Contreras, Acting State Registrar of Vital Statistics in

Trenton, or Defendant VitalChek.  Id. ¶¶ 38-39, 49.  VitalChek provides an online service by

which individuals can obtain government records, including birth certificates, instead of

obtaining such records from the state agency.  Id. ¶¶ 9, 47; Mot. to Dismiss 1.  This service is

available to any New Jersey resident.  Mot. to Dismiss 1.  Plaintiffs allege that in order to obtain

an additional birth certificate, individuals must apply in person or by mail to the State Bureau of

Vital Statistics in Trenton, New Jersey and pay a fee of $25, or submit a mailed, online, faxed, or

telephone application to VitalChek, for an additional processing fee of $10.95.  Compl. ¶¶ 9, 48.

In person processing time is two hours, mail requests to the State Bureau take approximately 8 to

10 weeks, and requests to VitalChek take approximately 15 to 22 business days.  Id. ¶ 49.

Plaintiffs have filed suit individually and on behalf of a putative class.  Id. ¶ 10. Plaintiff

James Terminiello was born in Jersey City, New Jersey on October 11, 1956.  Id. ¶ 17.

Terminiello alleges that in August 2007, he applied to renew his license at the Commission's

offices in Wyckoff, New Jersey, and was told he needed to obtain a new birth certificate.  Id. ¶

50.  Terminiello mailed an application to the State Bureau and received a new birth certificate

approximately eight to ten weeks later, on or about October 25, 2007.  Id. ¶ 51.  Terminiello then

obtained a renewal license at the Wyckoff offices.  Id.  Terminiello alleges that he incurred costs

for the additional birth certificate, postage, gas, and mileage.  Id.

Plaintiff Charles Witkowski was born in Jersey City, New Jersey on October 25, 1938.

Id. ¶ 18.  Witkowski alleges that in January 2007, he read a newspaper article about the

Commission policy.  Id. ¶ 52.  Witkowski applied by mail to the State Bureau for an additional

birth certificate in order to renew his driver's license.  Id. ¶ 53.  Witkowski received a birth

certificate approximately 10 weeks later, on or around April 17, 2007, and subsequently applied

NOT FOR PUBLICATION

for and was issued a renewal license at the Commission's offices in North Bergen, New Jersey. Id. Witkowski alleges that he incurred costs for the additional birth certificate and postage. Id.

Plaintiff Joseph T. Hadala was born in Jersey City, New Jersey on March 19, 1954. Id. ¶ 19. Hadala alleges that on or about July 28, 2008, he applied to renew his driver's license at the Commission's offices in Bayonne, New Jersey. Id. ¶ 54. Commission's agent did not allow Hadala to use his original birth certificate as identification in renewing his license, but Hadala was able to renew his license because he also presented a passport as identification. Id.

As a result of these alleged facts, Plaintiffs filed a complaint in lieu of prerogative writs on May 16, 2011 in the Superior Court of New Jersey, Appellate Division on behalf of themselves and as a putative class. Id. ¶ 1. Plaintiffs assert several causes of action: 1) that Commission's issuance of the policy statement was in violation of the New Jersey Administrative Procedure Act, N.J. Stat. Ann. 52:14B-1 to -15; 2) that Defendants' adoption and implementation of the policy statement was an encroachment upon judicial and legislative authority; 3) that the policy statement was rulemaking unauthorized by enabling legislation; 4) that the Commission's adoption of the policy statement constituted a failure to adhere to its own regulation; 5) that the policy statement is arbitrary and unreasonable; 6) that the policy statement violates Equal Protection under the United States Constitution; 7) that the policy statement violates Equal Protection and Age Discrimination under New Jersey Constitution; 8) that the policy statement violates Due Process under United States Constitution; 9) that the policy statement violates Due Process under New Jersey Constitution; and 10) that the policy statement violates the doctrine of fundamental fairness. Id. ¶¶ 55-94. Plaintiffs seek monetary damages and declaratory relief. Id. ¶¶ 95-98.

NOT FOR PUBLICATION

On June 9, 2011, defendant VitalChek removed the case to this Court based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 and as a class action pursuant to 28 U.S.C. § 1453(b) [3]. Not. of Removal ¶ 5. On July 12, 2011, VitalChek filed a motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs on August 24, 2011 filed a motion to remand the case to the New Jersey Superior Court, Appellate Division. Plaintiffs have also filed two motions contingent upon this Court's denial of the motion to remand – 1) a motion to require state defendants to answer or otherwise respond to the special complaint and 2) a motion for leave to amend the special complaint. Dkt. Entry #11, 12.

## STANDARD OF REVIEW

### I.       Motion to Remand

28 U.S.C. § 1447(c) provides:

If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal.

When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). Moreover, "removal statutes 'are to be strictly construed against removal, and all doubts resolved in favor of remand.'" Id. at 111 (citations omitted).

### II.      Rule 12(b)(6) Motion to Dismiss

On a motion to dismiss for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), the court is required to "accept all factual allegations as true, construe the

---

[3] VitalChek asserts that, based on the representation of the New Jersey State Attorney, Plaintiffs failed to properly serve State Defendants Commission, Raymond Martinez, and Yamileth Contreras, and as such, did not seek consent for removal from state defendants. Id. ¶¶ 6, 8. See Letter from Judith Andrejko, Deputy Attorney General, Dkt. Entry # 9. Plaintiffs have not objected to this potential defect in removal procedure and the Court may not address issues in removal procedure sua sponte. See In re FMC Corp. Packaging Sys. Div., 208 F.3d 445 (3d Cir. 2000).

NOT FOR PUBLICATION

complaint in the light most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief." Broadcom Corp. v.

Qualcomm Inc., 501 F.3d 297, 306 (3d Cir. 2007). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and

citations omitted). A claim is plausible on its face "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555, 546 (2007) (citations omitted). "[A] district court weighing a motion to dismiss asks

'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims.'" Id. at 563 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236

1974)).

### III.    Motion for Leave to Amend

Pursuant to Fed. R. Civ. P. 15(a), once a response to a party's pleading is served, that

pleading may be amended only by leave of court or by written consent of the adverse party.

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so

requires." Fed R. Civ. P. 15(a). A general presumption exists in favor of allowing a party to

amend its pleadings. Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984).

Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith

on the part of the movant as long as the amendment would not be futile and the opposing party

NOT FOR PUBLICATION

would not suffer undue prejudice.  Forman v. Davis, 371 U.S. 178, 182 (1962); Adams v. Gould Inc., 739 F.2d 858, 864 (3d Cir. 1984).

"[A] refusal of a motion for leave to amend must be justified," Riley v. Taylor, 62 F.3d 86, 90 (3d Cir. 1995), and the Third Circuit has identified the following as permissible justifications: "(1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment."  Id. at 90 (citing Conley v. Gibson, 355 U.S. 41, 48 (1957)). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." Jablonski v. Pan Amer. World Airways, Inc., 863, F.3d 289, 292 (3d Cir. 1988).

## DISCUSSION

### I.      Motion to Remand

Defendants may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a). Under the federal question statute, district courts have original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."  City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 163 (1997) (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987)).  A case may still arise under federal law even if state law creates a party's cause of action.  See City of Chicago, 522 U.S. at 529 (citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13 (1983).  This can occur when "a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law."

**NOT FOR PUBLICATION**

Id.  See also Gully v. First Nat. Bank in Meridian, 299 U.S. 109, 112 (1936) (finding that a federal question exists when a "right of immunity created by the Constitution or laws or the United States [is] an element, and an essential one, of the plaintiff's cause of action").

In City of Chicago, the Supreme Court considered whether a lawsuit involving both federal constitutional and state administrative challenges to Chicago Landmark Commission decisions could be removed to federal court.  City of Chicago, 522 U.S. at 160.  The Court found that, although the federal claims "were raised by way of a cause of action created by state law," federal jurisdiction was proper because these claims "turn[ed] exclusively on federal law."  Id. at 529 ("By raising several claims that arise under federal law, [plaintiff] subjected himself to the possibility that the City would remove the case to the federal courts.").  Here, Plaintiffs' claims assert state and federal constitutional violations by the Commission's policy statement by their complaint in lieu of prerogative writs, just as the plaintiff in City of Chicago asserted state and federal constitutional violations pursuant to the Illinois Administrative Review act.  See Compl. ¶ 1; City of Chicago, 522 U.S. at 160; Opp'n to Mot. to Remand 5.

Plaintiffs argue that City of Chicago does not apply, but concede that if it does, remand is not proper.  Mot. to Remand 10.  Specifically, Plaintiffs argue that the Supreme Court in City of Chicago based its holding on "the facial and as-applied federal constitutional claims raised by [plaintiffs]" arising under federal law, rather than plaintiffs' federal due process and equal protection claims.  Id. at 15 (quoting City of Chicago, 522 U.S. at 167-68).  The Supreme Court's failure to mention plaintiff's federal due process and equal protection challenges to the defendant's administrative proceedings in the above quote does not indicate to this Court that these claims alone were not determinative of federal jurisdiction.  Elsewhere in the opinion, the Supreme Court states that plaintiff's general federal claims subjected the case to federal

**NOT FOR PUBLICATION**

jurisdiction.  <u>City of Chicago</u>, 522 U.S. at 163 ("[w]e granted certiorari to address whether a case

containing claims that local administrative action violates federal law. . . is within the

jurisdiction of the federal district courts"); <u>Id.</u> at 166 ("[t]he District Court's original jurisdiction

derives from [plaintiff's] federal claims).  Because <u>City of Chicago</u> does apply, federal

jurisdiction, as Plaintiffs concede, is proper.

   Plaintiffs also argue that <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800

(1988), a patent case arising under 28 U.S.C § 1338, applies to this case and should lead to

remand.  Mot. to Remand 11.  Applying the same test for cases under the federal question

provision, 28 U.S.C. § 1331, the Supreme Court held that "§ 1338(a) jurisdiction likewise

extend[s] only to those cases in which a well-pleaded complaint establishes either that federal

patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on

resolution of a substantial question of federal patent law."  <u>Christianson</u>, 486 U.S. at 808-09.

"Whether a case is one arising under the Constitution. . . must be determined from what

necessarily appears in the plaintiff's statement of his own claim in the bill or declaration."

<u>Franchise Tax Bd.</u>, 463 U.S. at 10.  <u>Christianson</u> does apply to this case.  486 U.S. at 808

(although <u>Christianson</u> is a case arising under 28 U.S.C. § 1338, the same tests apply to those

under § 1331).  Plaintiffs' Fifth ("Arbitrariness and Unreasonableness" in that the Commission's

policy statement "offend[s] the state and federal constitution"), Sixth ("Equal Protection under

Untied States Constitution"), and Eighth ("Due Process under United States Constitution")

causes of action directly arise under federal law.  Compl. ¶¶ 76-83, 87-89; Opp'n to Mot. to

Remand 2-3.

   Plaintiffs' argue that their assertion of equal protection and due process violations are

"mere theories" rather than "distinct claims" because "[P]laintiffs may obtain the relief [they]

9

**NOT FOR PUBLICATION**

seek[] without prevailing on [them]." Mot. to Remand 21. Plaintiffs' attempt to turn their federal claims into alternative theories in the complaint does not hold up. Plaintiffs seek declaratory relief that Defendants are in violation of 42 U.S.C. § 1983, "as depriving citizens of the rights to equal protection of the laws. . . [and] of the right to due process, both as secured by the Fourteenth Amendment to the United States Constitution." Compl. ¶ 98(c). This relief is dependent upon Plaintiffs' prevailing on their federal claims, making them more than alternative theories in the complaint.

Plaintiffs' proposition that "'[t]he label which plaintiffs apply to their pleadings does not determine the nature of their cause of action" is not binding on this Court and is inapposite to the present circumstances. Mot. to Remand 21 (quoting Rains v. Criterion Sys., Inc., 80 F.3d 339 343 n.2 (9th Cir. 1996); citing Accord Mead Corp. v. ABB Power Generation, Inc., 319 F.3d 790, 795 (6th Cir. 1993); Johnson v. United States, 547 F.2d 688, 691 (D.C. Cir. 1976)). In those cases, plaintiffs attempted to plead around federal jurisdiction by placing state law-based labels on their claims, thus leading the respective courts to not allow those labels to determine the true causes of action. See Rains, 80 F.3d at 343; Accord Mead Corp., 319 F.3d at 795; Johnson, 547 F.3d at 691. Here, Plaintiffs have not placed inaccurate federal law labels on their claims; rather these labels accurately characterize and determine the nature of their cause of action. As the master of his own complaint, the plaintiff, in drafting the complaint, can control whether a case may be removed to federal court. See Caterpillar v. Williams, 482 U.S. 386, 392 (1987) ("[t]he well pleaded complaint rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law"). Plaintiffs here have chosen to assert federal due process and equal protection claims and seek federal declaratory relief in their complaint, and may not now choose to couch the nature of their cause of action differently.

NOT FOR PUBLICATION

Having original jurisdiction over Plaintiffs' claims that arise under federal law, the Court

may now exercise supplemental jurisdiction over the accompanying state law claims.  See City

of Chicago, 522 U.S. at 165; 28 U.S.C. § 1367(a).  "[T]he district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution."  28 U.S.C. § 1367(a).  Plaintiffs' state claims "derive from a common

nucleus of operative fact" with the federal claims.  City of Chicago, 522 U.S. at 165 (quoting

Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Exercise of supplemental jurisdiction over

Plaintiffs' state law claims is proper.

## II.      Motion to Dismiss

In Defendant VitalChek's Motion to Dismiss, VitalChek generally asserts that Plaintiffs

have not "allege[d] any involvement by VitalChek," have not "allege[d] that they used

VitalChek's services or paid it any monies," and have not "allege[d] any injury caused by

VitalChek."  Mot. to Dismiss 1.

### A.   First, Third, Fourth, and Fifth Causes of Action: Administrative Procedure Act, Rulemaking Unauthorized by Enabling Legislation, Failure to Adhere to Own Regulation, Arbitrariness and Unreasonableness

Plaintiffs do not allege any facts as to VitalChek in their recitation of their first, third,

fourth, and fifth causes of action.  See Compl. ¶ 55-58, 69-77.  These causes of action are

dismissed as to VitalChek.

### B.   Sixth and Eighth Causes of Action: Equal Protection and Due Process under United States Constitution

Section 1983 of Title 42 subjects to liability:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage,
of any State or Territory or the District of Columbia, subjects, or causes to be subjected,
any citizen of the United States or other person within the jurisdiction thereof to the

**NOT FOR PUBLICATION**

> deprivation of any rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983.

To establish a viable § 1983 claim, a plaintiff must demonstrate that "the conduct complained of was committed by a person acting under color of state law and that this conduct deprived the plaintiff of his rights, privileges and immunities secured by the Constitution or laws of the United States." Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981)).

Plaintiffs have failed to allege any personal involvement by VitalChek in relation to the wrongs alleged. "A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . Personal involvement can be shown through allegations or personal direction or of actual knowledge and acquiescence. Allegations of participation or of actual knowledge and acquiescence, however, must be made with appropriate particularity." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The only fact that Plaintiffs have alleged is that VitalChek is defendant Contreras' "vendor for online, faxed and telephoned applications for vital records" and that individuals affected by the policy statement may utilize VitalChek's services. Compl. ¶¶ 23, 47, 48. No factual allegations support Plaintiffs' contention that VitalChek implemented the policy statement in concert with the State Defendants. This contention is no more than a legal conclusion unsupported by factual content. See Iqbal, 129 S.Ct at 1949-50 (citing Twombly, 550 U.S. at 555). VitalChek is a private company that offers a nationwide "service to obtain expedited birth certificate reissuance," including to consumers born in Hudson County. Mot to Dismiss 15. Plaintiffs have not alleged that VitalChek played any part in rejecting birth certificates pursuant to the policy statement, or that it had any knowledge of the policy statement at all. Id. at 15, 17. None of the named Plaintiffs are alleged to have utilized VitalChek's

**NOT FOR PUBLICATION**

services as a result of the policy statement nor has VitalChek acted in any way to cause Plaintiffs harm. Id. at 17.

Plaintiffs argue that because this suit is a class action, they have standing to sue VitalChek even though they individually have had no interaction with it. Opp'n to Mot. to Dismiss 9. VitalChek is not seeking dismissal for lack of standing, but rather for failure to state a claim under Rule 12(b)(6). Reply to Mot. to Dismiss 2. Noting that there is no pending motion for class certification before the Court, that Plaintiffs have stylized this suit as a class action does not allow Plaintiffs to get around the pleading requirements of 12(b)(6). See Twombly, 550 U.S. at 558 (in consumer class action alleging antitrust conspiracy against incumbent local exchange carriers dismissed under Rule 12(b)(6), the Supreme Court found that "when allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court" (quotations omitted)). Even if other future and unnamed putative class members did interact with VitalChek, this will not affect this motion to dismiss because there is still no factual basis to support the allegation that VitalChek had knowledge of or implemented the policy statement with the State Defendants.

Plaintiffs also argue that they may sue VitalChek as a joint tortfeasor with the other Defendants. Opp'n to Mot. to Dismiss 13, 15 ("[I]n the conspiracy or joint tortfeasor context, a plaintiff suffering individual injury in fact from one of the alleged wrongdoers may have capacity to represent a class of the alleged victims, similarly situated, of the entire conspiracy or joint tort . . . In such a case, the plaintiff may represent all those similarly injured by the collective wrong." (quoting 1 Newberg on Class Actions § 2:8, at 106-07)). In Twombly, the Court found that the plaintiffs' allegations that the defendants engaged in a conspiracy did not

**NOT FOR PUBLICATION**

survive the motion to dismiss. 550 U.S. at 566 ("[w]e think that nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy"). Here, Plaintiffs only allege that VitalChek is defendant Contreras's "vendor for online, faxed and telephoned vital record applications," including expedited birth records, and that consumers affected by the policy statement could purchase such records from VitalChek to satisfy the policy and receive a driver's license. Compl. ¶ 9. These factual allegations do not make plausible VitalChek's purported implementation of the policy statement.

Plaintiffs indicate that they intend to argue that VitalChek is acting under color of state law under the "public function" test by "performing a function that has been 'traditionally the exclusive prerogative of the state.'" Opp'n to Mot. to Dismiss 31 (citing Black v. Indiana Area Sch. Dist., 985 F.2d 707, 711 (3d Cir. 1993). Many functions have been traditionally performed by the state, but few have been "exclusively reserved to the [s]tate." Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978). Plaintiffs' statement that a state action issue should not be determined on a motion to dismiss is inaccurate. Opp'n to Mot. to Dismiss 31 (citing Lake v. Arnold, 112 F.3d 682 (3d Cir. 1997) (holding that where a hospital was allegedly operating under color of state law, specific factual allegations in complaint asserting that defendants were state actors were enough to survive a motion to dismiss in that case)). The Court need not examine this issue because Plaintiffs have failed to allege any fact to show that VitalChek was involved in the action or decision to deprive Plaintiffs of their rights through adoption and implementation of the policy statement. The federal equal protection and due process causes of action are dismissed as to VitalChek.

**C.  Seventh and Ninth Causes of Action: Equal Protection and Age Discrimination and Due Process under New Jersey Constitution**

Article I, paragraph 1 of the New Jersey Constitution provides that:

**NOT FOR PUBLICATION**

> "[a]ll persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." N.J. Const., Art. I, para. 1 (1947).

The New Jersey Constitution "has been interpreted as conferring the right to equal treatment under the law, a right analogous to the guarantee of equal protection under the Fourteenth Amendment to the Federal Constitution." Doe v. Portiz, 142 N.J. 1, 94 (1995) (citations omitted). The New Jersey Constitution "does not enumerate the right to due process, but protects against injustice and, to that extent, protects values like those encompassed by the principle of due process." Id. at 99 (citations omitted). As discussed, Plaintiffs have not alleged any facts with regard to VitalChek's involvement in the adoption and implementation of the policy statement. These causes of action are dismissed as to VitalChek.

### D. Second Cause of Action: Encroachment Upon Legal Authority

Plaintiffs assert that the policy statement is an "unconstitutional encroachment upon the judicial and legislative branches of government, impairing their essential integrity, in contravention of Article III, paragraph 1 of the New Jersey Constitution," the separation of powers clause. Compl. ¶ 67. Plaintiffs assert that VitalChek is liable for encroachment because it implemented the policy statement in concert with the State Defendants. Id. As stated, Plaintiffs have not alleged any facts indicating that VitalChek did anything more than provide a means by which consumers nationwide may receive an expedited reissuance of their birth certificate. That some of these consumers may be individuals affected by the policy statement does not constitute implementation of the policy by VitalChek. No alleged actions of VitalChek constitute an encroachment upon legal authority and as such this cause of action must be dismissed as to VitalChek.

NOT FOR PUBLICATION

### E.  Tenth Cause of Action: Fundamental Fairness

Plaintiffs assert that VitalChek's implementation of the policy was in violation of the doctrine of fundamental fairness.  Id. ¶¶ 93-94.  As fundamental fairness is synonymous with due process, Black's Law Dictionary (9th ed. 2009), this cause of action is merely a repetition of the Eighth and Ninth causes of action and is dismissed as to VitalChek.

### III.     Motion for Leave to Amend

Plaintiffs have moved for leave to amend the complaint, pursuant to Fed. R. Civ. P. 15(a), to add and reorganize factual allegations and add a section on Limitation of Actions discussing the statute of limitations issue.  See Amended Compl. ¶ 11-1-11-7, 39-1, 50-1-54-3.  VitalChek argues that the motion should be denied on the grounds that adding this proposed information would be futile because it would not change the Court's Rule 12(b)(6) analysis for VitalChek's motion to dismiss.  Opp'n to Mot. to Amend 3-4.  See Jablonski, 863 F.2d at 292.  VitalChek's arguments are insufficient to overcome the judicial presumption in favor of permitting the amendment.  See Boileau, 730 F.2d at 938.  VitalChek is correct to assert that the proposed amendments do not change the Court's Rule 12(b)(6) analysis of VitalChek's motion to dismiss the present complaint.  The amendments may have bearing on later arguments which all Defendants, including VitalChek, are free to make.  This Court does not now address merits of any claim against the State Defendants nor arguments concerning the statute of limitations. Accordingly, as it stands the Court will permit Plaintiffs leave to amend their complaint within 40 days, albeit the issue of whether the State Defendants have been properly served has not been resolved.

**NOT FOR PUBLICATION**

## CONCLUSION

Plaintiffs' Motion to Remand is denied, Defendant VitalChek's Motion to Dismiss is granted, and Plaintiffs' Motion for Leave to Amend is granted.

December 27, 2011


<u>**s/ William H. Walls**</u>
United States Senior District Judge